No. 80–6039. GREEN *v.* UNITED STATES. C. A. 4th Cir. Certiorari denied. ▮▮▮▮▮▮▮

JUSTICE MARSHALL, dissenting.

In *United States* v. *Dinitz,* 424 U. S. 600 (1976), this Court held that when a criminal defendant's successful request for a mistrial is precipitated by " 'prosecutorial or judicial over-reaching,' " a subsequent trial on the same charges is barred by the Double Jeopardy Clause of the Fifth Amendment. *Id.,* at 607 (quoting *United States* v. *Jorn,* 400 U. S. 470, 485 (1971)). Because the decision of the Court of Appeals in the present case raises substantial questions concerning the scope of the *Dinitz* rule, I dissent from the denial of certiorari.

Petitioner was tried for conspiracy to distribute heroin.

The prosecution's chief witness was Special Agent Robert Dixon of the Drug Enforcement Administration. During cross-examination, defense counsel succeeded in eliciting several statements that substantially damaged Dixon's credibility.[1] Annoyed at this turn of events, Dixon made a deliberate, impermissible reference to petitioner's prior conviction for armed robbery. Defense counsel then moved for a mistrial, which was granted. Petitioner was subsequently reindicted on the same drug charge. He moved to dismiss this second indictment on the ground that the Double Jeopardy Clause, as interpreted in *Dinitz,* barred his retrial. The District Judge denied the motion, and a divided Court of Appeals for the Fourth Circuit affirmed. 636 F. 2d 925 (1980). The majority reasoned that *Dinitz* was inapplicable because the improper statement was made with the general purpose of prejudicing petitioner rather than the specific purpose of provoking a mistrial and because the misconduct was by a Government witness rather than the prosecutor.

The court's reasoning is questionable on both grounds. The central issue presented by this case—whether prosecutorial misconduct must have the specific purpose of provoking a defendant's request for a mistrial in order to raise double jeopardy concerns—has divided the Courts of Appeals. The majority in the court below, as well as the Court of Appeals for the Tenth Circuit in *United States* v. *Nelson,* 582 F. 2d 1246 (1978), cert. denied, 439 U. S. 1079 (1979), have limited *Dinitz* to situations in which the prosecution

---

[1] Under the Government's theory of the case, petitioner was a distributor for a heroin dealer. Agent Dixon testified that dealers did not distribute heroin through heroin users. The defense then produced evidence that petitioner was receiving large amounts of heroin for his personal use at the relevant time, and that the arrest report on petitioner noted that he was a "heroin user." The defense then asked Dixon if he was the agent who had arrested petitioner. Agent Dixon stated that he was not. The defense, however, again discredited Dixon by proving that he was indeed the arresting officer.

deliberately attempts to provoke a mistrial. In contrast, the Courts of Appeals for the Fifth and Eighth Circuits have concluded that the "prosecutorial overreaching" referred to in *Dinitz* is not limited to specific attempts to provoke a mistrial, but may also encompass other forms of serious Government misconduct intended in a more generalized way to prejudice the defendant. *United States* v. *Weaver,* 565 F. 2d 129, 133 (CA8 1977), cert. denied, 434 U. S. 1074 (1978); *United States* v. *Kessler,* 530 F. 2d 1246 (CA5 1976).

In my view, this latter interpretation of *Dinitz* is the correct one.[2] The Double Jeopardy Clause protects a criminal defendant's interest in a single, fair adjudication of his guilt or innocence. *United States* v. *Jenkins,* 420 U. S. 358, 370 (1975); *United States* v. *Wilson,* 420 U. S. 332, 343 (1975); *Downum* v. *United States,* 372 U. S. 734, 736 (1963). This constitutional interest is implicated whenever intentional governmental misconduct results in a mistrial. Regardless of whether the Government's misbehavior was designed specifically to provoke a mistrial or was simply intended to reduce the chances of an acquittal, the net effect on the defendant is the same: he is faced with the burdens and risks of a second trial solely because the Government has deliberately undermined the integrity of the first proceeding. Indeed, in *United States* v. *Jorn,* 400 U. S. 470 (1971), the central decision relied on in *Dinitz,* this Court concluded that

---

[2] As an initial matter, I question the validity of the lower court's assumption that the Government in such cases tailors its misconduct to achieve one improper result as opposed to another. It is far more likely that in cases such as this, where the prosecution is concerned that the trial may result in an acquittal, that the Government engages in misconduct with the general purpose of prejudicing the defendant. In this case, for example, the Government stood to benefit from Dixon's misconduct, regardless of whether it resulted in a guilty verdict or a mistrial. Moreover, even if such subtle differences in motivation do exist, I suspect that a defendant seeking to prevent a retrial will seldom be able to prove the Government's actual motivation.

"where a defendant's mistrial motion is necessitated by . . . prosecutorial impropriety *designed to avoid an acquittal,* reprosecution might well be barred." 400 U. S., at 485, n. 12 (emphasis added). This language strongly suggests that a general governmental intent to affect the trial in a manner that *objectively* might be viewed as risking a mistrial, rather than a specific, *subjective* intent on the part of the prosecution to achieve that precise result, is sufficient to invoke the double jeopardy concerns discussed in *Dinitz.* In any event, because the Courts of Appeals are divided on this important issue, I believe that this Court is obliged to resolve the conflict.

The second ground for the decision of the court below— that *Dinitz* does not apply to Government witnesses—is equally suspect. *Dinitz* referred to " 'prosecutorial . . . overreaching,' " 424 U. S., at 607, but nothing in that decision suggests that its holding was limited solely to misconduct by the prosecutor. To be sure, the prosecutor cannot be held responsible for the misconduct of every Government witness. However, in this case, Agent Dixon's role in the prosecution of petitioner was far more extensive than that of an ordinary Government witness. As Judge Winter observed in dissent:

> "Agent Dixon was a four-year veteran of the Drug Enforcement Administration. . . . Since joining DEA he had made over 150 arrests and participated in approximately 35 cases. Manifestly he was the agent in charge of the instant case; he sat at counsel table throughout the entire trial. Significantly, the government had been advised that defendant would not testify because of his record. Undoubtedly, as the agent in charge, Dixon had that knowledge." 636 F. 2d, at 930.

Given Dixon's extensive involvement in the prosecution of the Government's case against petitioner, I question whether the court below correctly found *Dinitz* to be inapplicable. In any event, the question is sufficiently important to warrant this Court's review.

Accordingly, I dissent from the denial of certiorari and would instead grant the petition and set the case for argument.