UNITED STATES of America,
Plaintiff-Appellee-Cross-Appellant,

v.

Franke Eugenio MARTINEZ, a/k/a Frank
E. Martin, a/k/a Francisco Martinez,
Defendant-Appellant-Cross-Appellee.

Nos. 81–1363, 81–1812 and 81–1862.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Nov. 10, 1981.

Decided Nov. 27, 1981.

Rehearing Denied Feb. 3, 1982.

Sander N. Karp, Karp, Goldstein & Stern, Denver, Colo. (Kenneth H. Padilla, Denver, Colo., with him on the briefs), for defendant-appellant-cross-appellee.

William Coulson, Asst. U. S. Atty., Denver, Colo. (Joseph F. Dolan, U. S. Atty., Robert T. McAllister, Asst. U. S. Atty., Denver, Colo., with him on the briefs), for plaintiff-appellee-cross-appellant.

Before LAY,* Chief Judge, GIBSON, Senior Judge, and BRIGHT, Circuit Judge.

LAY, Chief Judge.

Martinez appeals the denial of his motion to dismiss based on prosecutorial and judicial misconduct relating to four counts of an indictment charging possession and mailing of explosives. The government cross-appeals the district court's dismissal of three other counts of the same indictment based on a finding of double jeopardy. For reasons discussed, we dismiss each appeal for lack of jurisdiction.

On November 9, 1973, Martinez was indicted on seven counts relating to possession of unregistered explosives and the sending of explosives through the United States mails. Before trial commenced, in January 1981,[1] four counts were severed by the district court, Chief Judge Fred Winner presiding. Martinez went to trial on counts one, four, and seven; one count alleged a conspiracy and the other two charged possession of explosives and mailing of the explosives to an individual known as Carol Hogue.

On January 27, 1981, trial commenced in Pueblo, Colorado on the unsevered counts. On January 29, the defendant moved to replace two jurors with two alternates because of complaints allegedly made by the

---

* Chief Judge Lay, Senior Judge Gibson and Judge Bright are judges appointed to the Eighth Circuit Court of Appeals; they sit on this appeal in the Tenth Circuit by special designation.

1. The government alleges that Martinez was not arrested until September of 1980.

two jurors about spectators wearing T-shirts with "Free Kiko" (defendant's nickname) printed on them. The two jurors had also allegedly complained about a law student at the defense table wearing sunglasses. The government objected to the motion and Judge Winner denied the motion.

On the evening of the third day of trial, January 29, the trial judge held a secret meeting with the prosecutors, court personnel, and several government witnesses in his hotel room. Neither defendant nor his counsel were notified about this meeting. Judge Winner stated that he believed there was an atmosphere of intimidation in the court room caused by some of the spectators who were sympathetic to the defendant and that he wanted hidden cameras to be installed to record the intimidation. Judge Winner informed the prosecutors that he would grant a motion for a mistrial, but advised them not to make such a motion until after the cameras were installed and after the defense presented its case. The judge further indicated that he could provoke defense counsel to request a mistrial. One witness, Officer Tyus, stated that he could cause a mistrial by giving testimony which had previously been ruled inadmissible. Judge Winner repeated many of these comments in chambers to United States Attorney Roberts who arrived from Denver the next day. The trial judge also expressed a desire to remain in ex parte contact with the prosecutors. The reason given for not inviting defendant's counsel to the meeting was the court's suspicion (unverified on this record) that one of defendant's counsel might be involved in a conspiracy to intimidate the jury.

On January 30, the morning after the meeting, the government stated that it "did not object to the granting of defendant's motion for a mistrial." At that time all of the defendant's motions had been overruled. The prosecutor, Mr. Barksdale, explained:

We understand the jurors' two names were in the newspaper. I was aware of that this morning. We also understand from the Court this morning that the—in court, of course, the juror was—one juror was ill, and we, therefore, have changed our position.

The court granted a recess to allow the defense to decide whether to join in the government's motion. The defense then joined in the motion. The trial court granted the joint motion for mistrial.

After the original trial was terminated and a new trial was ordered, the defense discovered evidence of the Thursday night meeting held in Judge Winner's hotel room.[2] On the basis of the limited evidence then available, defense counsel filed a motion to dismiss counts one, four, and seven on the ground of double jeopardy. The retrial of these counts had been transferred to Judge John Kane in Denver. The government objected to defense counsel's attempt to question government lawyers; this objection was sustained and thus the defense was effectively precluded from discovering the details of the Thursday night meeting. Judge Kane then denied the motion to dismiss. Thereafter Martinez appealed.

On defendant's motion, the court "partially remanded" the case to the district court for further evidentiary hearings concerning the defendant's motion to dismiss.

The case was assigned to Judge Luther Eubanks, United States District Judge for the Western District of Oklahoma. Hearings were held on June 30 and July 1, 1981. At these hearings, defendant filed a new motion to dismiss all seven of the original counts on the grounds of prosecutorial and judicial misconduct. Evidence elicited at these hearings revealed the substance of the Thursday night meeting.[3]

2.  The defense was initially alerted to the possibility that other factors underlay the government's action by a television news report.

3.  The evening before the first day of hearings, the government produced an affidavit prepared and signed by United States Attorney Joe Dolan which described the Thursday evening meeting.

Judge Eubanks found that because Martinez was not informed about the Thursday night meeting, "the defendant was induced or lead into confessing, stipulating to, or agreeing to a mistrial motion without the benefit of all the facts." Judge Eubanks held that under these circumstances, defendant's consent to the motion for mistrial "is no consent at all, because he was not apprised of all the facts in connection with it" and therefore retrial would constitute double jeopardy. Judge Eubanks granted defendant's original motion to dismiss counts one, four, and seven for which he had been placed in jeopardy. The judge denied the motion to dismiss the previously severed counts two, three, five, and six. Both the defendant and the government filed new appeals.[4]

*The Government's Appeal.*

■ We turn first to the government's cross-appeal of Judge Eubanks' dismissal of counts one, four, and seven. 18 U.S.C. § 3731 provides:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

Under section 3731, an evaluation of the merits of defendant's double jeopardy claim is necessary in order to determine whether we have jurisdiction to hear the government's cross-appeal. *United States v. Scott,* 437 U.S. 82, 84–85, 98 S.Ct. 2187, 2190–91, 57 L.Ed.2d 65 (1978).

■ The law is well settled that if a defendant does not move for or join in a motion for a mistrial, the defendant may only be retried on a showing of "manifest necessity" for the declaration of the mis-

trial. *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165 (1824); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). However, where a defendant consents to a mistrial, there is no bar to retrial *unless* the government acted in a manner intended to induce a request for a mistrial. *United States v. Dinitz,* 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976); *United States v. Jorn,* 400 U.S. 470, 485 n.12, 91 S.Ct. 547, 557 n.12, 27 L.Ed.2d 543 (1971); *United States v. Pollack,* 640 F.2d 1152, 1155 (10th Cir. 1981).

■ This court has endorsed the proposition that the double jeopardy clause bars retrial if "bad-faith conduct by the prosecutor, or the judge, prods the defendant into requesting a mistrial." *United States v. Pollack,* 640 F.2d 1152, 1155 (10th Cir. 1981); *United States v. Brooks,* 599 F.2d 943 (10th Cir. 1979); *United States v. Leonard,* 593 F.2d 951 (10th Cir. 1979); *United States v. Nelson,* 582 F.2d 1246, 1248–49 (10th Cir. 1978), *cert. denied* 439 U.S. 1079, 99 S.Ct. 860, 59 L.Ed.2d 49 (1979); *United States v. Rumpf,* 576 F.2d 818, 822 (10th Cir.), *cert. denied,* 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); *United States v. Buzzard,* 540 F.2d 1383, 1387 (10th Cir. 1976), *cert. denied,* 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977).[5] It stands to reason if prosecutorial or judicial conduct is designed to avoid an acquittal of a defendant and motivates the request for or acquiescence in a declaration of a mistrial, retrial is precluded. *See Jorn,* 400 U.S. at 485 n.12, 91 S.Ct. at 557 n.12.

■ The present record unequivocally demonstrates that the government misrepresented its grounds for seeking a mistrial. The prosecution, as well as the judge, failed to disclose to the defense the meeting which precipitated the government's motion. Whether gross governmental negligence or

---

4. These two appeals have been consolidated with the earlier appeal from Judge Kane's ruling on defendant's original motion to dismiss. In view of the subsequent action by Judge Eubanks, the original appeal from Judge Kane's order has been superseded and is now moot.

5. It is noteworthy that the court did not find any of the prosecutorial or judicial errors alleged in any of the cited cases sufficient to vitiate defendants' consent to the declarations of mistrial.

intentional governmental misconduct which induces a defendant to request a mistrial is sufficient to bar retrial, *United States v. Davis*, 589 F.2d 904, 906 (5th Cir.), *cert. denied*, 441 U.S. 950, 99 S.Ct. 2178, 60 L.Ed.2d 1055 (1979); *United States v. Martin*, 561 F.2d 135, 139 (8th Cir. 1977), or whether intent to provoke a defendant to seek a mistrial is required, *Divans v. California*, 434 U.S. 1303, 1303, 98 S.Ct. 1, 54 L.Ed.2d 14 (1977) (Rehnquist, J.) (application for stay), the government's conduct in this case is more than sufficient to bar retrial. The government's failure to disclose the meeting to defense counsel and its misrepresentation as to the grounds for mistrial were obviously improper.[6] The conduct surrounding the government's motion was not ordinary error. The obvious government motive for misrepresenting the grounds for its motion for mistrial was to induce the defendant to join in the motion. Judge Eubanks found that the misrepresentation did "induce" defendant to join in the motion. Such finding is supported by the evidence and must be sustained. *See United States v. Green*, 636 F.2d 925, 927 (4th Cir. 1980), *cert. denied*, 451 U.S. 929, 101 S.Ct. 2005, 68 L.Ed.2d 316 (1981). On this basis we find retrial on counts one, four, and seven would constitute double jeopardy. We hold that this court lacks jurisdiction to entertain the government's appeal under section 3731 because the government may not appeal the dismissal of an indictment when the double jeopardy clause precludes further prosecution.

## The Defendant's Appeal.

Defendant, Martinez, appeals from Judge Eubanks' denial of his motion to dismiss the severed counts two, three, five, and six because of prosecutorial and judicial misconduct. He urges this court to review this order under either the collateral order doc-

trine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (applying *Cohen* rule to denial of motion to dismiss based on double jeopardy), or under the court's supervisory powers. During oral argument, counsel for defendant alternatively urged this court to treat the appeal as a petition for a writ of mandamus or prohibition.

■ We find that the order denying the motion to dismiss these counts is not appealable under the *Cohen* doctrine. The order is clearly an interlocutory ruling. *Cohen* has been applied sparingly in criminal cases and only in exceptional cases. *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (prosecution prohibited by the speech and debate clause); *Abney* (double jeopardy); *Stack v. Boyle*, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1950) (excessive bail); *United States v. Griffin*, 617 F.2d 1342 (9th Cir.), *cert. denied*, 449 U.S. 863, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980) (vindictive prosecution).[7] Martinez' claim of prosecutorial and judicial misconduct does not satisfy the prerequisites established in *Cohen*. 337 U.S. at 546–47, 69 S.Ct. at 1225–26. The issues—primarily the question of prejudice—are not "completely collateral" to a decision on the merits and defendant's right will not be irreparably infringed if review has to await a final judgment. *See United States v. Rey*, 641 F.2d 222, 223–24 (5th Cir. 1981); *United States v. Barham*, 608 F.2d 602, 604 (5th Cir. 1979).

■ We are aware of no precedent for using the supervisory powers of the appellate courts to assume jurisdiction over an interlocutory order or to dismiss counts of an indictment because of alleged governmental or judicial misconduct which oc-

---

6. Other than the prosecution's and trial judge's "belief," the present record contains no evidence of threats or intimidation occurring during the trial. The defendant elicited testimony from several witnesses to the effect that they had observed no acts of intimidation during the course of the proceedings. The United States Marshal in charge of the jury testified that he did not recall any of the jurors informing him about intimidation.

7. *But see United States v. Gregory*, 656 F.2d 1132 (5th Cir. 1981); *United States v. Brizendine*, 659 F.2d 215 (D.C.Cir.1981).

curred during a trial involving other counts contained in the indictment. Ordinarily, appellate courts may exercise their general supervisory power in cases *in which they have jurisdiction* in order to establish a general rule prohibiting governmental conduct, otherwise likely to be repeated, despite a lack of prejudice or without a showing of prejudice in the particular case. Courts have occasionally used their supervisory power to prevent the government from benefiting from misconduct in order to protect the integrity of the judicial system despite the lack of a constitutional or statutory rule protecting the defendant from the conduct. *See, e.g., United States v. Cortina,* 630 F.2d 1207 (7th Cir. 1980). *See generally* Note, The Supervisory Power of the Federal Courts, 76 Harv.L.Rev. 1656 (1963). It is clear this case does not fit into either of these categories.

■ Defendant urges this court to assume jurisdiction under its general supervisory powers because he alleges serious misconduct affecting the integrity of the judicial process. The difficulty with defendant's argument is that he has not shown that the misconduct will inevitably affect judicial proceedings related to the untried counts. Even if the misconduct has directly or indirectly prejudiced potential jurors or improperly influenced witnesses, it would be premature for this court to consider the fairness of a trial which has not yet commenced. If a nexus between the proven misconduct and the severed counts exists, defendant will have a full opportunity to demonstrate it. Whether the prosecutorial and judicial misconduct in the original trial will affect the fairness of a trial on the severed counts should be decided after the trial commences or on appeal from a final order in that trial. All that we decide is that we lack jurisdiction to review this interlocutory appeal.

■ Defendant's primary argument is that prosecutorial and judicial improprieties tainted the judicial process and that the process should therefore be terminated. The evidence supporting the defense of double jeopardy as to counts one, two, and four

sustains this view. The defendant's attempt to extend his argument to include the untried counts is a request to terminate judicial proceedings which have not yet commenced and have not yet been shown to be affected. Courts must tailor a remedy to suit the wrong. *United States v. Morrison,* 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981). The defendant's interest in receiving a fair trial is a paramount concern; this court's duty to maintain the integrity of the judicial process is paramount as well. Nonetheless, these salient principles are not implicated by the existence of the untried counts which are only tangentially related to the evidenced misconduct. Under the circumstances, these concerns cannot transcend the right of the public to see those lawfully indicted and charged with a crime held for trial and, if found guilty of the charge alleged, held accountable. The defendant has been lawfully indicted by a grand jury. The alleged misconduct in the earlier trial does not in any way taint the grand jury proceedings. We find it would be improper to utilize the court's supervisory power to dismiss the untried counts.

■ Defendant urges alternatively that this court should decide the issue by treating his appeal as an application for a writ of mandamus. *See Wilk v. American Medical Ass'n,* 635 F.2d 1295, 1298 (7th Cir. 1981): 9 Moore's Federal Practice ¶ 110.28, at 315–16 (1980). This argument misses the mark. Here defendant is doing nothing more than attempting to resurrect the charges of misconduct contained in the appeal as relevant to the issuance of a writ of mandamus. It is clear that mandamus may not be used as a substitute for an appeal. *Parr v. United States,* 351 U.S. 513, 520–21, 76 S.Ct. 912, 917–18, 100 L.Ed. 1377 (1956); *Knable v. Wilson,* 570 F.2d 957, 960 (D.C. Cir. 1977). Defendant's claim does not state the necessary predicates for the issuance of a writ of mandamus. It does not involve an inferior court acting outside its jurisdiction or refusing to exercise its authority when it has a duty to do so. Defendant does not allege that Judge Eubanks did not have authority to rule on the issues.

The decision was within the judge's authority to act and his ruling was not a purely ministerial act. Defendant has not borne his burden of demonstrating the existence of the type of exceptional circumstances which justify the issuance of a writ. *See United States v. Winner*, 641 F.2d 825 (10th Cir. 1981); *Plekowski v. Ralston-Purina Co.*, 557 F.2d 1218 (5th Cir. 1977).

We hold the government may not appeal the dismissal of counts one, four, and seven under section 3731 since the dismissal is based on specific evidence supporting a finding that the double jeopardy clause precludes retrial. We dismiss the government's appeal (81–1862) for lack of jurisdiction.

We dismiss the defendant's appeal from the denial of his motion to dismiss counts two, three, five, and six on the ground that the ruling is an interlocutory and not a final order. We therefore dismiss the defendant's appeal (81–1812) for lack of jurisdiction. In light of our ruling under 81–1862 the original appeal of Judge Kane's order (81–1363) is dismissed as moot.

IT IS SO ORDERED.